UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60166-CIV-DIMITROULEAS/TORRES

BRENDA DUNFORD, and all others similarly
situated,

    Plaintiff,

v.

ROLLY MARINE SERVICE CO., a
Florida corporation, and GREG POULOS, an
individual,

    Defendants.
_____/



## FIRST AMENDED COMPLAINT

Plaintiff, Brenda Dunford ("Dunford"), through her undersigned attorneys, files this First Amended Complaint against the Defendants, Rolly Marine Service Co., a Florida corporation, and Greg Poulos, an individual, and alleges:

### JURISDICTION AND VENUE

1. This suit is brought against the Defendants pursuant to 29 U.S.C. § 201 *et seq.*, (the "Fair Labor Standards Act"), and suit is brought against them pursuant to the common-law tort of defamation and Florida's Whistleblower Act, *Florida Statutes* § 448.101 *et seq.*

2. Jurisdiction is conferred upon this Court by:

    (a)    29 U.S.C. § 216(b);

    (b)    28 U.S.C. § 1331; and

    (c)    28 U.S.C. § 1343.

3. The supplemental jurisdiction of this Court is invoked with respect to Dunford's claim under the laws of Florida pursuant to:



(a) Title 28 U.S.C. § 1367(a), because the Florida claim is so related to the federal claims within the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution; and

(b) Title 28 U.S.C. § 1343, because the claim arises out of the same operative facts as the federal claim, and is such that the parties would ordinarily expect to try them in one proceeding.

4. Venue is proper for the United States District Court for the Southern District of Florida because:

(a) Dunford was employed in the Southern District of Florida by the corporate Defendant, which at all material times conducted, and continue to conduct, business in the Southern District of Florida; and

(b) Additionally, venue lies pursuant to 28 U.S.C. § 1391(b) & (c), because the acts that give rise to Dunford's claims occurred within the Southern District of Florida, and because the corporate Defendant is subject to personal jurisdiction there.

## CONDITIONS PRECEDENT

5. Dunford has complied with all the conditions precedent in this case, or they have been waived.

## PARTIES

6. Plaintiff, Dunford, is a citizen of the United States, who resides within Broward County, Florida.

7. The corporate Defendant is a Florida corporation which, at all times material, conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the United States and of the State of Florida.

8. Greg Poulos is an individual, who, at all times material, conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the United States and of the State of Florida.

9. Dunford, and the additional persons who may become Plaintiffs in this action, are non-exempt employees and/or former employees of the Defendant who are or who were subject to the payroll practices and procedures described in Paragraphs 18, 19, and 20 below who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. Based on information and belief the corporate Defendant has a policy not to pay overtime.

10. At all times pertinent to this Complaint, the corporate Defendant failed to comply with the FLSA, in that Dunford and those similarly situated to her performed services for the corporate Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid.

11. The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

12. The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

13. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.

14. During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

15. Dunford is an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

16. At all times material to this action, the Defendants and certain of their representatives violated Dunford's rights under the FLSA, including the right to be paid overtime, and the right to remain free from retaliation for having filed a suit alleging overtime violations, and both Defendants defamed Dunford.

## STATEMENT OF FACTS

17. Dunford has worked for the corporate Defendant for several years. Most recently, and for the last three years, Dunford worked as a bookkeeper for the corporate Defendant, and is a non-exempt employee.

18. In the course of employment with the corporate Defendant, Dunford and other similarly situated employees worked the number of hours required of them, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

19. Dunford and those similarly situated to her regularly worked in excess of forty (40) hours per workweek.

20. The records, if any, concerning the number of hours actually worked by Dunford and all other similarly situated employees, and the compensation actually paid to such employees, are in the possession and custody and control of the corporate Defendant, and Dunford is unable to state at this time the exact amount due and owed to her, or to each similarly situated employee. Dunford proposes to obtain such information by appropriate discovery proceedings to be taken in this case and to prove the amounts due at trial.

21. On Tuesday, January 4, 2005, Dunford filed a Complaint in Broward Circuit Court alleging that the corporate Defendant violated her rights under the Fair Labor Standards Act.

22. On Wednesday, January 5, 2005, at 10:50 a.m., that Complaint was served on the Defendant's general manager, Greg Poulos.

23. Thereafter, the Defendants retaliated against Dunford and defamed her as set forth the following paragraphs.

24. On Friday, January 7, 2005, two days after the Complaint was served, Defendant Poulos came to Dunford's office and said that he was really disappointed in her with respect to filing the lawsuit, and he told her in a threatening tone, "Wait to you see what I have in store for you, I am going to show you who is your daddy!"

25. Because of those comments, and others which made Dunford feel extremely uncomfortable, Dunford was forced to leave work early that Friday (at 8:30 a.m.), because she felt sick from the retaliation, including Poulos screaming at Dunford as she walked to the time clock to punch out: "You know, everyone here hates you Brenda."

26. Dunford wrote Joanne (the corporate Defendant's owner) explaining to her what happened and asked her to maintain control over the workplace because she was being harassed and threatened by Poulos, but the owner did nothing.

27. Poulos, however, responded to the letter stating, among other things, that he was disappointed that Dunford sued her.

28. Also on Friday, January 7, 2005, Poulos told Dunford's son that Dunford was going to have to get a new attorney, because the Defendant was moving the case to federal court, and undersigned counsel was not licensed to handle cases in federal court.

29. Dunford went to work Monday, January 10, 2005, and when she arrived that morning, her office door was closed, and a chair was lodged against the door, blocking entrance to it. Dunford went to open door, and Poulos said, "You no longer work in your office; you are to work across the hall with Sandy." Dunford's file cabinets and personal belongings had already been

moved out of her office and into the "new" office. The office with Sandy was a much worse office, and was filthy from Sandy's pet bird and sick children.

30. Poulos used to call Sandy's office "the pig sty", and stated that he would never even have the boat captains stay in there. Dunford was placed in Sandy's office by the Defendant to attempt to force her to quit.

31. A couple of days later, Poulos went in to Sandy's office and ordered Sandy to stand next to Brenda because he wanted a witness, and Poulos stated in a threatening tone, "You will retire on my money, but you will never work here again."

32. Poulos is also making sure that Dunford cannot do her work, because he has disallowed Dunford from printing out various computer-generated reports, and those printed out reports are necessary for Dunford to complete certain tasks. To print the report, Dunford must go in to "quick books", but when she does, the computer states that she must get permission from the "administrator". Dunford as requested access to the computer-generated reports on a daily basis, but the Defendant refused her access, except for one week.

33. Poulos is also assigning Dunford less work. For example, on Monday, January 17, 2005, Dunford went to post checks on to the work orders as she has done for the last six years, but a co-worker had already accomplished this task. The next day, the same thing had occurred, so Dunford wrote Poulos a note asking him to clarify who has the obligation to post the checks to the work orders. Poulos never responded to Dunford's letter.

34. Poulos's interference with Dunford's job duties has resulted in less work for Dunford. For example, Dunford's hours used to be 7:00 a.m. to 3:30 p.m., but after service of the lawsuit, her hours were reduced to approximately 7:00 a.m. to 2:00 p.m., because Poulos has taken

work away from Dunford and interfered with her ability to complete her tasks, all of which has resulted in less wages for Dunford, as she is currently paid $20.00 per hour.

35. About two weeks ago, Poulos told a co-worker (Mike Capalette) that Dunford had shot her first husband, shot another man, and pulled a gun on a third individual. Poulos told Capalette that he has a really good attorney and that he is having Dunford investigated.

36. On or about Friday, January 28, 2005, Poulos placed Dunford on administrative leave with pay. Poulos told her that the insurance company had been brought into the lawsuit, and they had to go through various records and could not do that while Dunford was there. That day, Poulos told Dunford that she has "no claim because she is an employee at will." In early February, 2005, Dunford received a letter from the Defendant indicating that she was terminated.

37. Dunford has retained the undersigned legal counsel to prosecute this action in her behalf, and has agreed to pay them a reasonable fee for their services.

38. Dunford is entitled to her reasonable attorneys' fees if she is the prevailing party in this action.

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME PAY

39. Dunford re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 38 as though fully set forth.

40. Dunford is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek, and seeks recovery of such overtime against the corporate Defendant.

41. All similarly situated employees are similarly owed their overtime pay for each overtime hour they worked and were not properly paid.

42. By reason of the intentional, willful, and unlawful acts of Defendant, all Plaintiffs (Dunford and those similarly situated to her) have suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

43. As a result of the corporate Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, all Plaintiffs (Dunford and those similarly situated to her) are entitled to liquidated damages as provided in § 216 of the FLSA, and are entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Dunford, and those similarly situated to her (who have or will opt into this action), demand judgment against Defendant for the wages and overtime payments due them for the hours worked by them for which they have not been properly compensated (back pay), liquidated damages, compensatory damages for pain and suffering, reasonable attorneys' fees and costs of suit, and for all proper relief, including pre-judgment interest, and any further relief that the Court deems necessary.

## COUNT II

## FAIR LABOR STANDARDS ACT – RETALIATION (BOTH DEFENDANTS)

44. Dunford re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 38 above as though fully set forth.

45. The treatment of Dunford more particularly described above violated the anti-discrimination/retaliation provisions of 29 U.S.C. § 215(a)(3) in that Dunford was willfully subjected to adverse personnel actions by the Defendants for asserting her rights to recover the overtime that she was due as provided by the FLSA.

Case 0:05-cv-60166-WPD   Document 8   Entered on FLSD Docket 02/17/2005   Page 9 of 13

46. There are no legitimate, non-retaliatory reasons for the adverse personnel actions taken against Dunford by the Defendants.

WHEREFORE, Dunford prays that this Court will grant judgment:

(a) Awarding Dunford equitable relief and additionally back pay and front pay which Dunford and all others similarly situated to her are due under the FLSA as a result of the Defendants' retaliation against Dunford;

(b) Awarding Dunford an additional equal amount as liquidated damages for the Defendants' willful violation of the FLSA;

(c) Awarding Dunford her costs, including reasonable attorneys' fees; and

(d) Granting such other relief as is just.

## COUNT III

## VIOLATION OF THE FLORIDA WHISTLEBLOWER'S ACT - § 448.102

47. Dunford re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 38 as though fully set forth.

48. Dunford objected to, and refused to participate in, an activity, policy, or practice of the Defendants which is in violation of a law, rule, or regulation, as set forth more fully above.

49. Dunford objected to the Defendants' intentional violations of the Fair Labor Standards Act.

50. Dunford refused to participate in an unlawful activity, policy, and practice of the Defendants, including but not limited to the Defendants' intentional violations of the Fair Labor Standards Act.

51. The failure of an employer to follow the Fair Labor Standards Act and regulations constitutes:

9

    (a)    an activity in violation of a law, rule, or regulation; and/or is

    (b)    a policy in violation of a law, rule, or regulation; and/or is

    (c)    a practice in violation of a law, rule, or regulation.

52.    As a direct and proximate result of Dunford's protected activity under the Florida Whistleblower Act (her filing of the lawsuit alleging violations of the Fair Labor Standards Act and regulations), and the adverse employment action the Defendant took against Dunford because of Dunford's protected activity, Dunford has been damaged. Her damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, punitive damages, emotional pain, suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Dunford respectfully requests that this Court:

(a)    Order Defendants to make Dunford whole by providing compensation for past pecuniary losses including back pay, with pre-judgment interest, in amounts to be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(b)    Order Defendants to make Dunford whole by providing compensation for future pecuniary losses including front pay, in amounts to be proven at trial.

(c)    Order Defendants to make Dunford whole by providing compensation for non-pecuniary losses including emotional pain, suffering, loss of dignity, mental anguish, loss of enjoyment of work, and humiliation, in amounts to be proven at trial.

(d)    Award Dunford her attorneys' fees and costs in this action.

(e)    Grant such further relief as the Court deems necessary and proper.

## COUNT IV

## DEFAMATION – DEFENDANT POULOS

53.     Dunford re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 38 as though fully set forth.

54.     The untrue and malicious statements (telling Capalette that Dunford shot two people and tried to shoot a third) about Dunford made by Defendant Poulos to Capalette harmed Dunford's reputation and/or lowered her in the estimation of the professional community in which she works, and/or deterred third parties from associating or dealing with her.

55.     The aforementioned untrue statements uttered by Poulos were untrue, and known by Poulos to be untrue at the time he made them.

56.     The aforementioned statements uttered by Poulos were malicious and uttered with the intent to harm Dunford's reputation in the community.

57.     The aforementioned statements have had a negative impact on Dunford's professional career and her reputation in the community.

58.     As a direct and proximate result of the intentional and premeditated defamatory statements uttered by Poulos, Dunford has suffered great economic and other losses.

WHEREFORE, Dunford respectfully requests that this Court award her compensatory damages for the injury to her reputation and good name in the community, allow her to amend this Complaint to add a claim for punitive damages, costs of suit, and such further relief that this Court deems proper.

## COUNT V

## DEFAMATION – DEFENDANT ROLLY MARINE SERVICE CO.

59. Dunford re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 38 as though fully set forth.

60. The untrue and malicious statements (telling Capalette that Dunford shot two people and tried to shoot a third) about Dunford made by Defendant Poulos (one of the corporate Defendant's management officials) to Capalette harmed Dunford's reputation and/or lowered her in the estimation of the professional community in which she works, and/or deterred third parties from associating or dealing with her.

61. The aforementioned untrue statements uttered by Poulos were untrue, and known by her to be untrue at the time she made them, and were made in the course and scope of Poulos's employment and subsequently condoned by the corporate Defendant.

62. The aforementioned statements uttered by Poulos were malicious and uttered with the intent to harm Dunford's reputation in the community.

63. The aforementioned statements have had a negative impact on Dunford's professional career and her reputation in the community.

64. As a direct and proximate result of the intentional and premeditated defamatory statements uttered by Poulos, Dunford has suffered great economic and other losses.

WHEREFORE, Dunford respectfully requests that this Court award her compensatory damages for the injury to her reputation and good name in the community, allow her to amend this Complaint to add a claim for punitive damages, costs of suit, and such further relief that this Court deems proper.

## DEMAND FOR TRIAL BY JURY

Dunford demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been duly furnished by United States mail to: Joseph H. Lowe, Esq., Stephens, Lynn, Klein, LaCava, Hoffman & Puya, 9130 S. Dadeland Boulevard, Penthouse II, Datran II, Miami, FL 33156, this 14th day of February, 2005.

Glasser, Boreth, Ceasar & Kleppin
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: Glabor@aol.com

By: _____
Chris Kleppin
Fla. Bar No. 625485

Harry O. Boreth
Fla. Bar No. 190903

C:/MyDocuments/Dunford/Complaint-FirstAmended02/03/05